The first case for argument is United States v. Robert Lee Childress, and Counsel, whenever you're ready. Thank you. May it please the Court, Ezequiel Cortez, on behalf of Mr. Childress, I'd like to reserve two minutes for rebuttal, if I may. Had the district court in this case sentenced Mr. Childress to 14 months, the high end of the applicable guideline, I wouldn't be here. What we'd like to focus on this morning is the three cases that we stand on. The Haywood case from the U.S. Supreme Court, which I maintain was an expansive ruling by Justice Gorsuch. In that case, you know it well, it basically says that whenever there is an increase in the penalty, there must be a proof beyond a reasonable doubt. Now I understand, in that case, something was implicated. The revocation itself implicated a five-year mandatory minimum. I suggest to the Court that that's a matter of degree, the sentence available is a matter of degree, and because we don't have a mandatory minimum here, nor was revocation automatic, we still maintain that the ruling in Haywood, as Justice Alito criticized it, is expansive. You have an issue with our decision in Henderson, which held that Justice Breyer's concurrence is controlling, not Justice Gorsuch's opinion or Justice Alito's concurrence. I have no issue with that, Your Honor. Okay, so you've been arguing to the rationale from Justice Gorsuch and Justice Alito, but you have not touched on Justice Breyer's analysis of the issue and the three factors that he identified. In my reply brief, I addressed it, and let me address it right now. Justice Breyer filed a concurring opinion, I believe, because he wanted to limit what he may have perceived as an expansive ruling by Justice Gorsuch. So Justice Breyer limited the application of Haywood to those three factors that were presented, which I mentioned earlier today. But that doesn't help us. Why? Because this very Court right now has two cases, two cases that touch directly on the unique facts presented by Mr. Childress. Those two cases are the McBell case and the Simtoff case that we've addressed directly. How do they address this issue? I would agree with the precedent in this circuit and others that normally in revocation proceedings, you have a preponderance standard, no doubt about that. But then we have the Simtoff and the McBell rulings that say when you revoke a new alleged criminal conduct, don't emphasize the new criminal conduct, and then thereby increase the penalty. That is prohibited. Why? Well, didn't the district court here explicitly state that the judge was considering the breach of trust, the breach of the court's trust on supervised release, which happened to occur because of a new criminal violation, but it didn't seem from the sentencing transcript that the district court was suggesting that the sentence was imposed as a punishment for the new offense, but rather as for the breach of trust. You are right in part, and I have, I don't know why I thought you would ask this question. I have the transcript in front of me, and yes, the district court addressed breach of trust, even said, Mr. Childress, you lied to me, you breached the court's trust. But then the district court specifically said, ultimately, for purposes of deterrence, protecting the public, and here is SEMTA, reflecting the seriousness of this conduct. That's a prohibited basis and a revocation of supervised release. That's what SEMTA addresses directly, and what we maintain is that most cases, everything would be fine, but in this case, Your Honor, the judge went way beyond the top of the guidelines, and he specifically said, I'm giving you, he actually gave Mr. Childress 27 months, but that was in error because the top of the guidelines was 24. But he gave him 24 months, and the real reason, it's in the transcript, the district court emphasized the fraud that Mr. Childress had allegedly committed, and unlike other cases like the Oliver case cited by the government, Mr. Childress did not admit the conduct. Here, he disputed it, that's why we had the hearing, and we submit that because of the SEMTA ruling, when you take the testimony of Dr. Gao here, and you see how poorly, how poorly she did on cross-examination, you have unreliable testimony. Well, the district judge was satisfied with it, and he saw the credibility, and he made those findings. I understand that, Your Honor, and maybe, maybe he shouldn't have, because the transcript speaks for itself. It is the same judge, Judge Correale, very nice judge, who also articulated the forbidden factors, the seriousness of the offense. We believe that this case presents an unusual circumstance that could be viewed under Haywood Y, because you have inherently unreliable testimony, there's no doubt about that. Second, you don't have a complaint, like normally, you've done violations of supervised release, the two of you, and you know that most of the times they have a complaint for new conduct, separate from the supervision. You don't have that here, so you don't have an independent judicial finding of probable cause even, and so what the government did here is presented this person who contradicted herself on one of the key issues here, and although Judge Correale said, yes, I find that what she did, what he did was terrible, he made an implied finding of credibility, I maintain that was clear error, and it's not my opinion. If you just look at her cross-examination, her contradictions- Can I ask you a different question before we lose your time? Your second argument was that Childress's counsel at the hearing did not have a fair opportunity to cross-examine or without risk to Sixth Amendment rights. I didn't really follow that argument. Can you explain to me, if you're not withdrawing it, can you explain to me how counsel was limited in cross-examination? Yes, of course, and I'll tell you right now. At issue was whether there was a contract, the agreement that is in the record here. I can tell the court that there were other documents available, there were other witnesses available, and other avenues of evidence. The problem with that is, I was in a situation where if I proffer anything, produce any document for impeachment purposes, that could be used at a later prosecution, either for wire fraud in federal court, or false pretenses fraud in state court, where there was already an investigation going, so I couldn't address, fully address, with affirmative evidence, the allegations. Why isn't that a tactical decision on your part? There's no compulsion that you produce it, and the Sixth Amendment requires compulsion, doesn't it? Yes, and you're right. It wasn't a compelled situation. I'm explaining why I felt, and it is a tactical decision, undoubtedly. But the problem is, what that creates, another dynamic that highlights the unfairness of the hearing. What I proposed to Judge Correale, it's in the record, he could have violated allegations one and two, and even three, even three. But considered it, as this court has said, SIMTAF has not been withdrawn or contradicted or superseded. Judge Correale could have said, Mr. Childress, because of the new conduct, I'm giving you the high end of the guidelines. That would have been fine. We would not be here. And so my tactical decision was in not exposing my client to future prosecution in a separate forum. But isn't that just part of what comes with invoking your right to silence, the Fifth Amendment rights? Yes, ma'am. So we have case law that says you cannot be compelled to testify, but that doesn't mean there are no consequences in that you haven't, in your instance, provided the documents to the witnesses you wanted to provide. Correct. And that would not be a factor in a preliminary hearing, if you will, in another separate prosecution that had already been instituted for the underlying crime. But here we have a revocation proceeding, Your Honor, that could proceed with hearsay, with a preponderance standard. And there's a lot of discretion here. We maintain, I believe, 90% of revocation cases would go just fine with preponderance, so long as the judge, with a caveat by this court in Simtom, with a caveat that they don't overemphasize the new criminal conduct. And that is basically fair, and that's what Justice Gorsuch was touching on. New criminal conduct should always be subjected to a finding by a jury, to be on a reasonable doubt. So we're going into a revocation hearing with the presumption of innocence at risk. There's something unfair, basically unfair, about that. Again, Judge Correale could have revoked on all three allegations and limited the penalty to the high end of the guidance, and that exceeded it. And we believe that he did that because he was very upset, and he did consider the forbidden factor of the seriousness of the offense, which was not permitted in a revocation proceeding. Okay, so you are over time now. Oh, sorry. That's okay. Thank you. I will give you a couple minutes for rebuttal. Thank you. Good morning. May it please the court, Benjamin Hawley for the United States. Starting with the sentencing issue, Simtom does not say that merely mentioning the seriousness of the offense, there's a categorical bar on that, or that automatically results in a need for reversal. Here, the district court mentioned seriousness just twice, and both times in the context of talking about this ongoing fraud that Mr. Childress has committed fraud multiple times over. And demonstrating that continuance is what Simtom and the other cases in that line talk about as an acceptable mention of seriousness of the offense. What it can't be is seriousness of the offense as the sole or primary motivation for a sentence on a supervised release violation. Here, the district court also talked about deterrence, talked about protection of the public from Mr. Childress and his ongoing fraud. In terms of the underlying standard, even if Heyman, you know, required some parsing with the plurality and the concurrences, this court has already done that multiple times over. And Oliver and Richards, consistent with every other circuit to consider this issue, has held that the preponderance of the evidence standard is the correct standard, even with new criminal conduct, so long as there's not a mandatory minimum and you're not increasing the maximum, neither of which was present here. I'm certainly happy to answer the court's questions, but I believe you understand our position. So, Mr. Childress' brief made much of Dr. Gow's testimony that she drove a white Mercedes. Right. How does that impact her credibility? Does it defeat her credibility when she couldn't identify where the vehicles were located but then was purportedly driving one of them? Right. So, two responses. The first is I would point to the redirect examination, pages 60 to 61 of the record, where the prosecutor came back and said, you know, asked exactly about that because that was a focus of cross-examination. And she said, well, the promissory note was not clear. And she said, I hope so. I hope this is the car that I thought I was having, but I don't know because I'm still out some money. I don't know which car is which. It was a vague promissory note that just mentioned cars, not, you know, with a license plate or a VIN number or something like that. Second, the district court considered all of that, saw her testify, heard these exact arguments, and found her, at the very least, sufficiently credible to credit that with corroboration from the documentary evidence. So Dr. Gao claims that she transferred money to Mr. Childress through a wire transfer. Why is there no evidence of that in the record? There was. There was the, I believe it was Exhibit 2, that the district court referenced the receipt is the wrong word, but the example, the showing that the wire transfer had occurred, it was $1.1 million and $50,000, I believe. She sent that to him. He had promised in that promissory note with the cars to pay that back within five days. That never came. And she, as far as I know, is still out the money, but certainly was by the time of this hearing. Okay. Thank you.  May I re-read? My colleague says the district court mentioned the forbidden factor just twice. I would argue that that type of error is like a toxin. A little bit would be lethal. Second? Can I ask, why is it a forbidden factor? I thought that what Simtab said is that the revocation or the sentence can't be based solely or primarily on the severity of the new crime. That doesn't mean you can't consider the severity, does it? You're absolutely right, and we're emphasizing on the degree to which those factors work when they're considered by the district court. So it's not forbidden, is it? No, I call it forbidden because of the way it was considered here. The record is very clear that the new conduct was the overwhelming reason for going up to 27 months at first and then coming down to 24 when the judge was corrected. So forbidden is my own word, but it is very explicit. You're not supposed to do that. You can consider it, but only lightly. That's what Simtab suggests, and the language is mine, only lightly, but you can. And Simtab doesn't even say lightly. It says you can't use this factor as your sole basis or even primarily, right? Primarily, precisely, Your Honor. We argue that the district court here primarily relied on the new conduct. And that's all I have. Thank you for the extra time. Thank you both for your arguments this morning. And this case, United States v. Childress, is submitted.
judges: BADE, SUNG, Simon